IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| v. : | 5:07-CR-02 (WDO) |
| SPURGEON GREEN, JR., DOROTHY GREEN, DOROTHY MACK and JACK JOSEPH : | |
| Defendants : | |

## ORDER

Defendants were indicted on January 12, 2007 on 122 counts involving allegedly dispensing prescription medication which, according to the facts made known to the Court thus far, involved serious bodily injury and even death in at least 13 cases. Specifically, Spurgeon Green, Jr. was indicted on: 1 one count of conspiracy to illegally dispense Schedule II, III and IV drugs; 11 counts of illegally dispensing Schedule II drugs and by doing so caused the death of a human being; 2 counts of illegally dispensing Schedule II drugs and by doing so causing serious bodily injury; 70 counts of illegally dispensing Schedule II narcotics; 4 counts of illegally dispensing Schedule III narcotics; 27 counts of unlawfully pre-signing and dispensing Schedule II prescriptions; and, 1 Forfeiture count. Dorothy Green was indicted on: 1 count of conspiracy to illegally dispense Schedule II, III and IV drugs; and, 1 Forfeiture count. Dorothy Mack was indicted on: 1 count of conspiracy to illegally dispense Schedule II, III and IV drugs; 5 counts of illegally dispensing Schedule II drugs and by doing so caused the death of a human being; 27 counts of unlawfully

1

pre-signing and dispensing Schedule II prescriptions; and, 1 Forfeiture count. Jack Joseph was indicted on: 1 count of conspiracy to illegally dispense Schedule II, III and IV drugs; 3 counts of illegally dispensing Schedule II drugs and by doing so caused the death of a human being; 3 counts of illegally filling prescriptions written by Spurgeon Green Jr. for a Schedule II controlled substance; and, 1 Forfeiture count.

The Defendants appeared before the Magistrate Judge on January 16 and 17, 2007 for their Initial Appearance hearings and arraignments. Spurgeon Green's bond was set at $300,000 unsecured, his passport was ordered surrendered to the Probation Officer and standard conditions of bond were ordered. Dorothy Green's bond was set at $100,000 unsecured, her passport was ordered surrendered to the Probation Officer and standard conditions of bond were ordered. Jack Kelly Joseph's bond was set at $100,000, 10% secured, his passport was ordered surrendered to the Probation Officer and standard conditions of bond were ordered. Dorothy Mack's bond was set at $200,000 unsecured, her passport was ordered surrendered to probation and standard conditions of bond were ordered. The Magistrate Judge's reasoning for the amounts of the bonds set were that the case has been pending since 2004, based on a previous dismissal and re-indictment, that the charges are not murder charges, that bonds in the state court are still in effect, that he did not detect any danger to the community and that Defendants have remained in the area and have not sought to flee the area while the case has been ongoing.

The Government filed a motion to appeal the bonds set by the Magistrate Judge arguing that, based on the nature and circumstances of the crimes charged, each count is

prescribed a prison term of more than ten years, some counts involve up to life imprisonment, and each count involves a narcotic drug. Therefore, the Government contends, the conditions of bond should be amended to appropriately reflect the seriousness of the circumstances. After carefully considering the parties' arguments and evidence in the hearing on this matter, the Court enters the following order.

"When defendants are accused of violation of certain drug laws, subject to rebuttal by the person accused it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act." United States v. Hurtado, 779 F.2d 1467, 1470 n.2 (citing 18 U.S.C. § 3142(e)). Courts are to take the following factors into consideration when making these determinations: "(1) the nature of the crime as involving a narcotic drug; (2) the weight of the evidence against each defendant; (3) the defendant's background in terms of familial, financial, and residential ties to the community, and past history of involvement with drug and other crimes; and (4) the danger to others in the community if the defendant were released prior to trial." Id. at n.3 (citing 18 U.S.C. § 3142(g)).

"Section 3142(e) provides that the presumption of flight arises 'if the judicial officer finds that there is probable cause to believe that the person committed an offense' . . . carrying potential punishment of ten or more years in prison." Hurtado, 779 F.2d at 1477. "[T]he return of a true bill by a grand jury, resulting in indictment, conclusively demonstrates

3

that probable cause exists implicating a citizen in a crime." Id. (citation omitted). "Once the government makes a showing of probable cause that the defendant committed one of the enumerated acts this triggers the presumption that the defendant either constitutes a danger to the community or poses a risk of flight from justice. At that point, it becomes the task of the defendant to come forward with evidence to meet his burden of production - that is, evidence to suggest that he is either not dangerous or not likely to flee if turned loose on bail." Id. at 1479 (citing 18 U.S.C. § 3142(e)).

Several years after Hurtado the court of appeals again had the opportunity to address more specific questions raised pursuant to the Bail Reform Act in United States v. King, 849 F.2d 485 (11th Cir. 1988). The court explained how lower courts should determine if a defendant is a "danger to the community" by quoting the following portions from the legislative history:

> The concept of defendant dangerousness is described throughout this chapter by the term 'safety of any other person or the community.' The reference to safety of any other person is intended to cover the situation in which the safety of a particular identifiable individual, perhaps a victim or witness, is of concern, while the language referring to the safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community. The Committee intends that the concern about safety be given a broader construction than merely danger of harm involving physical violence. This principle was recently endorsed in United States v. Provenzano and Andretta, 605 F.2d 85 (3rd Cir.1979), in which it was held that the concept of 'danger' as used in current 18 U.S.C. 3148 extended to non-physical harms such as corrupting a union. The Committee also emphasizes that the risk that a defendant will continue to engage in drug trafficking constitutes a danger to the 'safety of any other person or the community.'

Id. at 487 n.2. Taking these factors and those from Hurtado into consideration, the court found that detention was appropriate when the defendant was charged with narcotics offenses

4

punishable by more than 10 years in prison, that she had been the leader of a high volume and extremely profitable cocaine distribution scheme that operated in several southeastern States and that the government's evidence showed the defendant directed several drug couriers who participated in the drug scheme. Id. at 488. The court held that based on these factors no condition of release would reasonably secure the safety of the community. Id. Further, the defendant's substantial drug connections outside the United States, the fact that her home was in forfeiture and the presumption that the defendant had the funds to finance flight were more than adequate to support pretrial detention as necessary to assure the defendant's presence at trial. King, 840 F.2d at 489. See also United States v. Giordano, 370 F. Supp.2d 1256 (S.D. Fla. 2005) (defendant charged with 35 counts of mail and wire fraud and facing 8 to 10 possible years in prison granted $1 million bond based on lack of criminal history and lack of significant ties abroad).

In the case at bar, although Defendants are at this stage presumed innocent of the crimes charged in the indictment, Defendants are required to present evidence to overcome the rebuttable presumption of their danger to the community and risk of flight on these very serious charges that caused bodily harm and even death. As to Defendant Mack, she argues that her ties to the community are sufficient to eliminate her risk of flight - that she was born in Georgia, has siblings in the area, is married with two children and her husband has a job here. As to Defendants Spurgeon and Dorothy Green, they contend the narcotics charges against them do not involve the "typical" type of drugs involved in the federal courts and therefore they are less of a "danger to the community." The Green Defendants also argue

5

they have significant community ties - they have lived in the community since 1990, they are married, they adopted their 9 and 11 year old grandchildren and they regularly attend church. Defendant Spurgeon Green also pointed out that he has lost his medical license and therefore cannot (legally) prescribe medications at this time. Defendants Spurgeon and Dorothy Green also contend that they do not have the funds to flee as they are now living on Social Security. As to Defendant Joseph, he contends he is not a risk of flight and not a danger to the community because he is married with 6 children, his wife is a nurse and he does not have the funds to flee. Finally, Defendants contend that since there have been no other, prior cases there have been no occurrences of not appearing for any court date in the past and they have appeared when called in this case.

Based on the evidence presented thus far, and the evidence expected to be presented at the trial of this case for which there is probable cause to believe at this time based on the issuance of the indictment, the only condition or combination of conditions that will reasonably assure the Defendants' appearance at trial or the safety of the community are increased, secured bonds. The nature of the crimes charged involve conduct that causes a grave concern for the safety of the community. The crimes charged involve narcotics that caused serious bodily injury to many individuals, and death to 13. This case involves maximum sentences of more than 10 years imprisonment, and some counts involve 20 years to life imprisonment. Even considering the "community ties" listed above, this case involves an overwhelmingly serious risk of flight based on Defendants' presumed ability, and motivation, to access cash and flee. A large amount of cash was found when the warrant was

6

served at Spurgeon and Dorothy Green's residence - more than $800,000. Based on the foregoing, the Magistrate Judge's order of release is reversed regarding the amounts of the bonds set and the bonds shall be increased as follows:

**Spurgeon Green, Jr.** - based on his role in the offenses charged as the physician who wrote the prescriptions in issue, bond shall be $ 250,000 fully secured, and shall be satisfied irrespective of and unrelated to any other existing bond held by any other court or government agency. Defendant's passport shall remain surrendered to the Probation Officer. Defendant's travel is restricted to the State of Georgia and any and all other standard conditions of bond that are customarily imposed by the Probation Officer shall be followed with the exception that Defendant will not be required to submit to drug testing.

**Dorothy Green** - based on her relatively minor role in the offenses charged (office manager of Spurgeon Green's medical office(s)), bond shall be $ 50,000 fully secured, and shall be satisfied irrespective of and unrelated to any other existing bond held by any other court or government agency. Defendant's passport shall remain surrendered to the Probation Officer. Defendant's travel is restricted to the State of Georgia and any and all other standard conditions of bond that are customarily imposed by the Probation Officer shall be followed with the exception that Defendant will not be required to submit to drug testing.

**Jack Joseph** - based on his role as the pharmacist who filled the prescriptions, bond shall be $ 100,000 fully secured, and shall be satisfied irrespective of and unrelated to any other existing bond held by any other court or government agency. Defendant's passport shall remain surrendered to the Probation Officer. Defendant's travel is restricted to the State

7

of Georgia and any and all other standard conditions of bond that are customarily imposed by the Probation Officer shall be followed with the exception that Defendant will not be required to submit to drug testing.

**Dorothy Mack** - based on her role as the physician's assistant who allegedly pre-signed the prescriptions, bond shall be $100,000 fully secured, and shall be satisfied irrespective of and unrelated to any other existing bond held by any other court or government agency. Defendant's passport shall remain surrendered to the Probation Officer. Defendant's travel is restricted to the State of Georgia and any and all other standard conditions of bond that are customarily imposed by the Probation Officer shall be followed with the exception that Defendant will not be required to submit to drug testing. Further, Defendant Mack's Physician's Assistant license shall be surrendered to the Probation Officer until the conclusion of this case.

**SO ORDERED this 24th day of January, 2007.**

**S/**
**WILBUR D. OWENS, JR.**
**UNITED STATES DISTRICT JUDGE**